**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

**EQUAL OPPORTUNITY
EMPLOYMENT COMMISSION,**

                         **Applicant,**

        **v.**                                **1:06-CV-1804-WSD**

**JOHN WIELAND HOMES and
NEIGHBORHOODS, Inc.**

                         **Respondent.**

_____

**ORDER**

This matter is before the Court on the Court's Order to Show Cause Why the

Equal Employment Opportunity Commission's Subpoena Should Not Be Enforced

[5], Respondent John Wieland Homes, Inc.'s ("Wieland") Response to the Court's

Order to Show Cause, [6], Petitioner Equal Employment Opportunity

Commission's ("EEOC") Reply to Response to the Court's Order to Show Cause

[7] and the argument of counsel at the show cause hearing conducted on August

23, 2006.[1]

_____

[1] Also before the Court is Respondent's Motion for Leave to File Surreply
in Support of Response to Order to Show Cause, and Incorporated  Memorandum
of Law In Support [8] and Petitioner's Brief in Response to Respondent's Motion
for Leave to File Surreply [9].  Having considered the submissions, the
Respondent's Motion for Leave to File [8] is GRANTED.

The issue before the Court is whether the EEOC may enforce the subpoena duces tecum it served on Wieland on March 24, 2006.  The Court concludes the subpoena is enforceable, although with a more carefully articulated scope.

## I.    FACTS

Wieland Homes is an Atlanta-based "builder of high quality housing communities."  (Brief in Response to Order to Show Cause at 2.)  Although based in Atlanta, Wieland has business operations outside of the Atlanta area, including in Georgia, Kentucky, Tennessee and the Carolinas.  (App. for Order to Show Cause Why the Equal Opportunity Employment Commission's Subpoena Should Not Be Enforced ¶ 7) ("App. for Order to Show Cause.")

Michelle Mouser, a white female, worked for Wieland in Atlanta from December 2002 until late May of 2004 as a Human Resources Representative in Wieland's Atlanta corporate headquarters. (Id. ¶ 6.)  In her role as Human Resources Representative, Ms. Mouser was responsible for interviewing applicants to Wieland, including applicants for sales positions.  (Brief in Response to Order to Show Cause at 4-5.)  On May 17, 2004, Ms. Mouser submitted a letter of resignation to Wieland.  (Id. at 2.)  One week later, on May 24, she ended her employment. (Id. at 3.)

In early November of 2004, Ms. Mouser approached the EEOC and alleged that "she was forced to resign from her position . . . because she opposed discriminatory employment practices regarding the hiring and/or assignment of African American sales agents within the Respondent's housing communities." (App. for Order to Show Cause ¶5.)

On November 18, 2004,[2] Ms. Mouser filed a formal charge with the EEOC. The charge alleged:

> I.    I began my employment as a Human Resources Representative in December 2002.  I was instructed by management, that I could not hire qualified African American Sales Representatives for predominantly White populated communities. Management's goals were to hire potential employees with corresponding races for each community.  Most of the communities were in predominantly White neighborhoods.  There are only a few African American employees employed in the corporate office.  If I did not follow the instruction given to me by management, I would have been terminated.  During my employment I complained about the discriminatory practices to

---

[2]  The date on which Ms. Mouser's charge should be considered "filed" is a matter of dispute between the parties relevant to Wieland's argument that the charge is time-barred.  Wieland argues that the charge should be considered filed for timeliness purposes on November 18; the EEOC claims November 10.  The Court makes no ruling on the issue, and uses the November 18 date solely because that date is stamped on the face of the charging document.

> Jim Harper [sic], Human Resources Manager.  Jim Harper [sic] spoke to John Wood, Vice President of Human Resources about my complaint but no action was taken.  I could no longer participate in the illegal hiring actions, therefore, I was forced to resign on May 24, 2004.
>
> II.    I believe that I was forced to resign because of the illegal hiring actions of the company in violation of Title VII of the Civil Rights Act of 1964, as amended.
>
> III.   I believe that African Americans as a class are being discriminated against because qualified candidates are not hired for positions because of their race in violation of Title VII of the Civil Rights Act of 1964, as amended.

(App. for Order to Show Cause, Ex. A.)

On December 6, 2004, the EEOC sent Wieland a Request for Information ("RFI") concerning Ms. Mouser's allegations.  The RFI demanded information concerning Wieland's organizational structure and function, a position statement on the allegations of the charge, and copies of all rules or policies germane to the charge. (Brief in Response to Order to Show Cause, Ex. C.)  The RFI requested detailed information regarding Wieland's hiring and recruiting practices.  (Id.) The RFI designated the "issue"on which it sought information as "Constructive Discharge."  (Id.)

-4-

Wieland responded to the RFI with a letter challenging the validity of Ms. Mouser's charge on the grounds that she had no standing to assert a charge for Wieland's African American employees and that she alleged no grievances on her own account.  (Id. at Ex. D.)

On June 7, 2005, the EEOC sent Wieland a second RFI and notice that it intended to conduct an onsite investigation concerning Ms. Mouser's allegations. (Aff. of Bernice Williams ¶ 11.)  These requests required Wieland to produce detailed information on its organizational structure, hiring policies, and historical hiring practices. (Brief in Response to Order to Show Cause, Ex. E.)  The onsite investigation notice identified fifteen categories of information, including details concerning all applicants for sales agent positions, and specifically requested information on certain individuals alleged to have been denied hire, promotion, transfer, or reassignment as sales agents. (Id.)

Wieland responded with a letter expressing a willingness to cooperate, but challenging the EEOC's basis for the inquiry it sought to conduct.  The letter stated, "Because the only allegation at issue is Charging Party's claim for constructive discharge, such an expansive investigation appears to be beyond the scope of the charge and unrelated to the key issue of whether there was even a

constructive discharge at all." (<u>Id.</u> at Ex. F.)  The letter concluded with an

invitation to negotiate the scope of the EEOC's request.  Wieland alleges the

EEOC did not respond to this invitation.  (<u>Id.</u> at 4-5.)

On August 25, 2005 the EEOC, sent a third RFI and "a letter notifying

[Wieland] that it was expanding the investigation to include allegations of race

discrimination contained in the charge of discrimination." (Aff. of Bernice

Williams ¶ 13.)  The letter specifically stated, "I am hereby notifying [Wieland]

that the Atlanta District Office has extended the scope of its investigation . . . to

include the following issues and basis:  <u>Failure to hire and/or assign Black sales</u>

<u>agents at Respondent's facilities located in predominately white communities</u>."

(Response Brief to Order to Show Cause, Ex. G.) (emphasis in original).  The

EEOC admits that it "had sought such information from the beginning," and

explains this letter as "designed to confirm . . . that the [EEOC] intended to

investigate the claims of discrimination regarding African Americans."  (Aff. of

Bernice Williams ¶ 13.)  Wieland reiterated its legal objections to the EEOC's

information request.

On March 24, 2006, the EEOC served a subpoena duces tecum on Wieland

(the "subpoena").  The subpoena designated a relevant time period of January 1,

2003 to "the present," applied a general geographic limitation of "Respondent's Georgia sales area, including, but not limited to outlying counties and cities within that sales area,"[3] and requested 19 categories of information:

(1) organizational charts and information on Wieland's structure in Georgia, Tennessee, Kentucky, South Carolina, and North Carolina;

(2) information on Wieland's "hierarchy" and "chain of command"

(3) documents concerning the name and location of each housing community built by Wieland in Atlanta;

(4) documents concerning each housing community in which Wieland has sold homes in Atlanta;

(5) Wieland's "written policies and procedures for hiring sales agents" that were in effect in the Atlanta, Georgia sales area;

(6) Detailed information on sales agent recruiting, the definition of "applicant" by Wieland, the nature and timing of events in the application process, and copies of application forms;

---

[3] For categories 3 through 19 the requests were even further limited to "Respondent's Atlanta, Georgia sales areas."  (Subpoena, n1.)

(7) Employment applications "for each and every individual who applied for a sales agent position during the relevant time period" including "documents which reflect the race of each of the above individuals";

(8) Documents that identify the name and race of every individual who was "initially hired, promoted, or otherwise placed into a sales agent position";

(9) Wieland's written policies and procedures for assigning sales agents to housing communities;

(10) Detailed information on every Wieland sales agent in the Atlanta area, including name, address, phone number, race, dates of employment, location and housing communities of assignment, name, race, and job title of all persons responsible for assigning each sales agent, and date and reason of termination;

(11) The sales price range for each Wieland housing community;

(12) For each housing community, the name and race of every sales agent assigned to that community;

(13) The pay structure, income, commissions, of each sales agent by housing community

(14) Copies of personnel files for each sales agent;

(15) All documents and information received by Wieland from job applicants or employees alleging discriminatory hiring practices;

(16) Information on specific named individuals alleged to have been denied hire, assignment, reassignment, or transfer discriminatorily;

(17) Information generally on all Wieland employees denied assignment, reassignment, or transfer;

(18) Documents pertinent to Ms. Mouser's resignation; and

(19) Information concerning all individuals who resigned from Wieland

(See Subpoena.)

On April 7, 2006 Wieland petitioned the EEOC to revoke the subpoena or to limit its scope to allegations concerning Ms. Mouser's resignation.  (Brief in Response to Order to Show Cause at 5.)  The EEOC refused, and Wieland in turn

refused to comply with the subpoena.[4]  On June 30, 2006[5] the EEOC applied for an order to show cause, which this Court issued on July 18, 2006.

## II.    DISCUSSION

In <u>EEOC v. Shell Oil Co.</u>, 466 U.S. 54, 66 (1984), the Supreme Court stated that "the existence of a charge that meets the requirements set forth in §706(b), 42 U.S.C. § 2000e-5(b) is a jurisdictional prerequisite to judicial enforcement of a subpoena issued by the EEOC."  The EEOC is entitled to investigate "only . . . evidence relevant to the charge under investigation."  <u>Id.</u> at 64 (quotations omitted).  Title VII "requires the filing of a charge before the EEOC can exercise

---

[4]  The parties exchanged several letters during this period in which Wieland asked for a compromise on the scope of the subpoena.  The EEOC demanded complete compliance.

[5]  On July 1, 2006, the EEOC announced to the press its decision to petition this Court to enforce the subpoena.  The press accounts of the EEOC announcement note comments and opinions expressed by the EEOC's regional attorney.  If the comments by the EEOC's Atlanta regional attorney were reported accurately, they suggest that the EEOC already has concluded, without an investigation, that Wieland has engaged in discrimination.  This casts doubt on whether the EEOC's investigation will be conducted objectively.

The EEOC is charged with the important function of investigating alleged discrimination.  That function must be performed, even when dealing with parties who resist investigation.  The EEOC should fulfill its public duty using all of the investigative resources available to it, including motions filed with the court seeking enforcement of requests for information to which the agency believes it is entitled.

its powers and authority." <u>EEOC v. Tire Kingdom</u>, 80 F.3d 449, 452 n.2 (11th Cir. 1996).  "Ordinary logic indicates that it is beyond the authority of the EEOC to investigate charges which cannot be pursued." <u>EEOC v. Ocean City Police Dep't.</u>, 820 F.2d 1378, 1380 (4th Cir. 1978) (<u>en banc</u>) (<u>vacated on other grounds</u>, 486 U.S. 1019 (1988)).  In other words, the EEOC's subpoena power is limited by the scope of and allegations in the underlying charge.

Relying on this principle of law, Wieland raises two objections to the EEOC's subpoena:  First, Wieland contends that the subpoena is not based on a valid charge.  Wieland specifically argues that Ms. Mouser did not have standing to file the charge on behalf of African Americans, that the Ms. Mouser did not assert a cognizable claim, and that the charge was time-barred.  Second, Wieland argues that the scope of the subpoena is not reasonably related, in time and subject-matter, to the charge.

    A.    <u>Validity of Ms. Mouser's Charge</u>

        1.    *<u>Ms. Mouser's Standing to file a Charge</u>*

Wieland objects to the EEOC subpoena on the grounds that Ms. Mouser does not have standing to file charges on behalf of Wieland's African American employees.  (Brief in Response to Order to Show Cause at 15-20.)  Because Ms.

Mouser does not claim that she was a direct victim of discrimination, Wieland claims that she does not have standing to file a charge under Title VII based on alleged discrimination against others.  (Id.)

Title VII remedies are available to all persons "claiming to be aggrieved" who "alleg[e] that an employer . . . has engaged in an unlawful employment practice."  42 U.S.C. 2000e-5(b).  In other words, standing under Title VII is as broad as permitted by Article III of the Constitution, limited only by the necessity of alleging a wrong recognized by Title VII.  See EEOC v. Mississippi College, 626 F.2d 477, 483 (5th Cir. 1980) ("provided she meets the standing requirements imposed by Article III, Summers may charge a violation of her personal right to work in an environment unaffected by racial discrimination").  Consistent with Article III, Ms. Mouser must claim herself to be aggrieved to have standing to file a charge.

Wieland's arguments assume that Ms. Mouser's charge is limited to unlawful actions taken against African Americans and thus is an action on their behalf.  Wieland overlooks that Ms. Mouser has claimed herself to be aggrieved by an unlawful employment practice which she openly opposed.  Specifically, Ms. Mouser claims to have been constructively discharged as a result of her stated

objection to Wieland's alleged hiring practices which she claims discriminated against African Americans.  Her allegations also necessarily imply that she has been denied her personal right to work in an environment that is free from discrimination.  See id.  Ms. Mouser alleges that she was injured as a result of her opposition to alleged discriminatory hiring practices.  If her allegations are true, then Ms. Mouser also was aggrieved by being denied a discrimination-free work environment.  She has alleged a personal injury for alleged discriminatory hiring practices and the Court concludes she has standing to file the charge.

2.      *EEOC Jurisdiction to Issue the Subpoena*

Wieland alleges that even if Ms. Mouser has Article III standing, her charge fails to state a cognizable claim. (Brief in Response to Order to Show Cause at 11-15.)  Wieland notes that the charge itself is not marked "retaliation," nor does Ms. Mouser describe expressly a constructive discharge or any other explicit negative employment action taken by Wieland in response to her opposition to Wieland's alleged discriminatory hiring practices.  (Id. at 14-15.)

Generally, the litigation of substantive defenses on the underlying merits is discouraged at the subpoena enforcement stage.  See EEOC v. City of Norfolk Police Dept., 45 F.3d 80, 82 (4th Cir. 1995).  "It is well-settled that the role of a

district court in a proceeding to enforce an administrative subpoena is sharply limited; inquiry is appropriate only into whether the evidence sought is material and relevant to a lawful purpose of the agency."  EEOC v. Kloster Cruise Ltd., 939 F.2d 920, 922 (11th Cir. 1991).  In other words, "a subpoena enforcement proceeding is not the proper forum in which to litigate the question of coverage under a particular statute."  Id. (citations omitted).

Two inquiries related to the validity of an EEOC subpoena are appropriate to be addressed in a subpoena enforcement proceeding:  (1) Whether the EEOC makes a "plausible argument in support of its assertion of jurisdiction"; and (2) Whether the information sought by the subpoena is "plainly incompetent or irrelevant to any lawful purpose [of the EEOC]."  Id.  The Eleventh Circuit has also described the permissible areas of inquiry as "(1) whether the administrative investigation is within the agency's authority, (2) whether the agency's demand is too indefinite, and (3) whether the information sought is reasonably relevant."  EEOC v. Tire Kingdom, Inc., 80 F.3d 449, 450 (11th Cir. 1996).  Thus, the Court's inquiry at the enforcement stage is limited.

a.     *The Substantive Validity of Ms. Mouser's Charge*

First, the EEOC must make a "plausible argument" that Ms. Mouser's

charge comes within the boundaries of its authority under Title VII.  The Court

finds that it has done so here.

As a general matter, Title VII grants the EEOC jurisdiction "to prevent any

person from engaging in any unlawful employment practice as set forth in §2000e-

2 or 2000e-3. . ."  42 U.S.C. § 2000e-5(a).  Section 2000e-2 prohibits practices

such as discriminatory hiring.  Section 2000e-3 forbids employers to "discriminate

against any of his employees because he has opposed any practice made unlawful

by this subchapter. . ."   Accordingly, whenever the EEOC receives an allegation

that a person was dismissed or constructively discharged for opposing an alleged

discriminatory practice, the EEOC has a plausible argument that it has jurisdiction

to issue a subpoena.

Title VII grants employees not only the right to oppose discriminatory

practices without retribution, but also to work in a discrimination-free

environment.  <u>Mississippi College</u>, 626 F.2d at 483 ("Summers may charge a

violation of her own personal right to work in an environment unaffected by racial

discrimination").  When a discrimination-free environment is denied to the

charging party, the EEOC has a plausible argument in support of its jurisdiction.

In the present case, Ms. Mouser alleges that Wieland has engaged in

discriminatory hiring practices in violation of §2000e-2(a)(1).  Ms. Mouser has, in

effect, alleged that she was constructively discharged because she opposed

Wieland's alleged discriminatory practices.  On this basis alone, the EEOC has a

plausible argument to support its jurisdiction.  Ms. Mouser also has the right to

work in a discrimination-free environment.  Her allegations necessarily include her

claim that this right was denied.  According to Mississippi College, this grievance

constitutes a plausible argument in support of EEOC jurisdiction.

The information sought by the EEOC also must be "not plainly incompetent

or irrelevant to any lawful purpose." Kloster Cruise, 939 F.2d at 922 (quotations

omitted).  The "lawful purpose" of an EEOC subpoena is "to investigate charges of

unlawful discrimination."  Id. at 923.  The Eleventh Circuit clarified that a

jurisdictional challenge on these grounds "might be appropriate" when "the EEOC

is attempting to investigate a charge totally unrelated to illegal discrimination."  Id.

(citations omitted).

The information sought by the EEOC in the present subpoena is targeted to address the alleged discrimination against African Americans that Ms. Mouser claims to have opposed, which denied her a discrimination free work environment, and which was the ultimate basis for the alleged constructive discharge. The subpoena seeks information related to unlawful discrimination, and therefore fulfills a lawful purpose. Accordingly, the Court finds Ms. Mouser's charge was cognizable under Title VII and the subpoena sought information for a lawful purpose of the EEOC.

b.    *The Timeliness of Ms. Mouser's Charge*

Wieland next objects to the EEOC's jurisdiction to serve the subpoena, claiming the subpoena is time-barred. Title VII requires a charge to be filed "within one hundred and eighty says after the alleged unlawful employment practice occurred." 42 U.S.C. 2000e-5(e)(1). A charge is "incapable of invoking EEOC's investigatory powers" if it "shows on its face that it is untimely." EEOC v. City of Norfolk Police Dept., 45 F.3d 80, 83 (4th Cir. 1995) (quotations omitted). In other words, an EEOC subpoena can be defeated on timeliness grounds when "there are no facts in dispute relating to the untimeliness of the charge." Id. (citations omitted). Disputes over the date that the alleged unlawful

-17-

employment act occurred, or over whether the alleged unlawful act was a single incident or a continuing state or series of events, will defeat an objection to timeliness at this early stage.  See, e.g., Pacific Maritime Ass'n v. Quinn, 491 F.2d 1294, 1296 (9th Cir. 1974) ("The proper response of the district court to the appellants should have been:  We do not know whether or not the violation, if any, is a continuing one; one of the reasons for conducting the investigation is to determine the answer to that very question.").

Ms. Mouser filed her resignation letter with Wieland on May 17, 2004. Ms. Mouser's last day of work with Wieland was May 24, 2004.  Her formal charge was filed with the EEOC on November 18, 2004.  The dating and timing of the events relevant to the limitations period are in dispute.  If the Court, as Wieland urges, construes the date of the "unlawful employment practice" as the date of Ms. Mouser's letter of resignation, the period of time between that event and the formal filing of her charge would be 185 days--5 days beyond the statutory limitations period.  If, however, the Court construes the "unlawful employment practice" to have come about with Ms. Mouser's actual cessation of work for Wieland, then the intervening period before the charge is 178 days--within the statutory limitations period.

The date on which Ms. Mouser allegedly suffered an unlawful employment action depends upon the specific facts of the case, which have not been developed. The timing of the alleged adverse employment action also depends on whether the alleged unlawful activity was a single incident or a continuing practice, which is a mixed question of fact and law that the parties have not addressed. As a general rule, the limitations period begins to run at the time of the discriminatory act, not when the consequences of that act are experienced. Del. State Coll. v. Ricks, 449 U.S. 250, 258 (1980). If the alleged unlawful conduct consists of a single incident to which a specific moment in time can be assigned (such as Ms. Mouser's submission of a resignation letter), then the filing period would commence on that date. If, however, the unlawful conduct is a continuing violation, then the filing period might start at a different time, such as on the day that Ms. Mouser left Wieland. See Mississippi College, 646 F.2d at 485. These are material questions which need to be investigated and resolved.[6]

---

[6] The EEOC alleges that the charge should be considered effective as of November 10, the date Ms. Mouser was interviewed by an EEOC employee, and not November 18, the date borne on the face of the charge. In light of the Court's refusal to hold that the subpoena is time-barred using the later date, it declines to rule on at what precise moment the "filing" of the charge occurred, and from which date the filing deadline commenced to run. Resolution of the timeliness issue is inappropriate at this stage.

The purpose of the EEOC's subpoena is in part to develop the facts necessary to answer these questions.  After Wieland's response to the subpoena, the parties and the Court will be in a better position to determine whether Ms. Mouser's charge is timely.  Accordingly, the Court holds that Wieland's timeliness objection is premature and it would be inappropriate not to enforce the subpoena on timeliness grounds.

**III.   Scope of the Subpoena**

The final issue raised by Wieland is the scope of the EEOC's subpoena. Wieland contends that the subpoena is too broad in time and subject matter. Wieland first claims without elaboration that the time period of January 1, 2003 forward set by the EEOC is unreasonable.  Wieland also claims the subject matter scope of the subpoena is overbroad.  Wieland objects specifically to the requests for information regarding transfers and assignments, the pricing of Wieland homes, and the compensation of sales agents.  (Brief in Response to Order to Show Cause at 24-25.)

Whenever a charge is filed with the EEOC, Title VII demands that the agency "make an investigation."  42 U.S.C. 2000e-5(b).  The scope of the EEOC's investigation is governed by §161 of Title 29, which authorizes the EEOC to issue

subpoenas and to require the production of evidence.  The statute does not limit

the scope of the EEOC's subpoena power.  Despite the breadth of the EEOC's

investigatory powers, the agency does not have plenary power to investigate.

EEOC v. Shell Oil Co., 466 U.S. 54, 66-67 (1984).  That is, the existence of a

charge does not authorize the EEOC to conduct an investigation based on what it

unilaterally believes is appropriate.  To the contrary,  EEOC subpoenas are limited

in scope to information that is "reasonably relevant" to the charge.  EEOC v. Tire

Kingdom, 80 F.3d 449, 450 (11th Cir. 1996).  The Court evaluates the scope of the

subpoena based on the charge.

In the present case, the subpoena defines the relevant time period as

"January 1, 2003, to the present."  Ms. Mouser was employed in late 2002, and

alleges that discriminatory practices occurred during the entirety of her

employment, thus the January 1, 2003 date appears reasonable.  In that the

subpoena imposes a production obligation upon materials that existed as of its

issue date, March 24, 2006, is an appropriate date to close the relevant period.

Accordingly, the reasonably relevant time period for the subpoena is January 1,

2003 to March 24, 2006. Wieland shall produce responsive documents created

during that period.

Regarding the subject matter of the subpoena, the categories to which Wieland objects--assignment, pricing, and compensation[7]--are relevant to an investigation of the discriminatory practice that Ms. Mouser alleges and which she claims she opposed. Where Wieland's sales agents were assigned and transferred to and from will assist in evaluating Wieland's hiring practices. If, as Ms. Mouser alleges, Wieland hired sales agents for specific neighborhoods on race-based grounds, assignment information is reasonably calculated to investigate if that allegation is supported. The pricing of the homes in which different sales agents worked and their compensation also constitute information useful and relevant to determine whether Wieland in fact practiced the type of discrimination charged by Ms. Mouser, including whether African Americans were assigned to sell homes in lower-priced home neighborhoods or neighborhoods which generated less sales income. Also, the court finds subpoena category 2 sufficiently vague as not to require a response.

Wieland personnel files reasonably may contain both responsive information and non-responsive personal information. Accordingly, Wieland is required only

_____

[7] This information is requested in subpoena categories 3-13, 15-17, 19. Subpoena category 18 requests information specifically about Ms. Mouser's resignation.

to produce from personnel files information regarding sales agent hiring, transfers, compensation, and termination or resignation.

Although Wieland does not object on geographic grounds, the Court notes that the subpoena is overbroad in this respect.  The subpoena itself limits the geographic area of categories 3 through 19 to Atlanta.  For precision, the Court defines Atlanta, Georgia for purpose of the subpoena as the Atlanta metropolitan statistical area as defined by the Office of Management and Budget ("Atlanta MSA").

Subpoena category 1 requests organizational charts and information for Wieland's operations in five southeastern states, including Georgia.  For states other than Georgia named in this category, Wieland is required only to produce organizational charts showing its corporate structure in these states and to identify its housing communities.  If Wieland operates under a separate organizational structure in any of these states, documents identifying those structures shall also be produced.

Regarding subpoena categories 3-19, the Court notes that Ms. Mouser worked in Atlanta.  Ms. Mouser did not charge that Wieland's operations in states other than Georgia practiced discriminatory hiring, nor did she allege that her job

responsibilities or knowledge extended beyond the Atlanta area.  Ms. Mouser did

not allege that human resources departments in areas other than Atlanta or in states

other than Georgia were practicing discriminatory hiring practices.  Most

importantly, all of the subpoena requests directed towards the substance of Ms.

Mouser's discrimination allegations are limited to the Atlanta area.  Thus, requests

for information for areas outside of Atlanta are not reasonably related to the

charge, except as otherwise stated in this Order.[8]

Accordingly,

**IT IS HEREBY ORDERED** that the subpoena is enforced, consistent with

the restrictions contained in this Order.  Specifically, the time period for the

subpoena shall be from January 1, 2003 to March 24, 2006.  The geographic area

for requests 3-19 of the subpoena shall be the Atlanta MSA.  For subpoena

category 1, Wieland is required for states other than Georgia named in this

category only to produce organizational charts showing its corporate structure in

those states and to identify its housing communities.  If Wieland operates under a

---

[8]  The Atlanta area limitation does not prejudice the EEOC's investigatory powers.  If, in the course of its investigation, the EEOC discovers evidence of unlawful employment practices outside of the Atlanta area, the EEOC may seek permission to enlarge the scope of its information request.

separate organizational structure in any of those states, documents identifying those structures shall also be produced.  Regarding subpoena category 14, Wieland only is required to produce hiring, transfer, compensation, and termination or resignation information from sales agents personnel files.  Wieland is not required to respond to subpoena category 2.

**IT IS FURTHER ORDERED** that Wieland shall comply with the subpoena as described above by October 23, 2006.

**IT IS FURTHER ORDERED** that Respondent's Motion for Leave to File Surreply in Support of Response to Order to Show Cause, and Incorporated Memorandum of Law In Support [8] is **GRANTED**.

**SO ORDERED** this 25th day of September, 2006.


_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE